**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ZHENGKAI PAN,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANSUNION LLC, GOLDMAN SACHS BANK USA, and BANK OF AMERICA, N.A.,**<br><br>**Defendants.** | **Case No. 24-cv-12963-DJC** |

**MEMORANDUM AND ORDER**

**CASPER, C. J.** **September 9, 2025**

## I. Introduction

Plaintiff Zhengkai Pan ("Pan") has filed this lawsuit against Defendants Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC; Trans Union LLC[1]; Goldman Sachs Bank USA and Bank of America, N.A. (collectively, "Defendants") alleging that Defendants violated the Fair Credit Reporting Act (the "FCRA") by reporting inaccurate credit information. D. 1. Experian moves to compel arbitration, D. 54, and stay discovery pending the Court's determination on its motion to compel arbitration, or, in the alternative, for a protective

[1] Pan now has dismissed all claims against Equifax Information Services, LLC, and TransUnion LLC with prejudice. D. 70; D. 71.

order, D. 62. Pan does not oppose the motion to stay discovery, D. 69, and the Court allowed that motion at the motion hearing. D. 78. For the reasons stated below, the Court ALLOWS Experian's remaining motion to compel arbitration. D. 54.

## II. Standard of Review

When ruling on a motion to compel arbitration, courts should "draw [upon] the relevant facts from the operative complaint and the documents submitted to the [Court] in support of the motion to compel arbitration." Cullinane v. Uber Techs, Inc., 893 F.3d 53, 55 (1st Cir. 2018). Courts have applied a summary judgment standard to motions to compel where the parties have "relied extensively upon exhibits filed in the record outside of the complaint." Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 258 F. Supp. 3d 255, 259 (D.P.R. 2017); see Pelletier v. Yellow Transp., Inc., 503 F. Supp. 2d 397, 399 (D. Me. 2007). Accordingly, on a motion to compel arbitration, the Court "consider[s] facts in the light most favorable to the [non-movant] . . . and exercise[s] its 'wide discretion' to look beyond the complaint at pleadings and documents submitted by either party." Boulet v. Bangor Sec. Inc., 324 F. Supp. 2d 120, 123-24 (D. Me. 2004) (quoting Anderson v. Delta Funding Corp., 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004)); see Proulx v. Brookdale Living Cmtys. Inc., 88 F. Supp. 3d 27, 29 (D.R.I. 2015) (citing cases).

## III. Factual Background

The following facts are drawn from Pan's complaint, D. 1, the declaration and exhibits filed with Experian's motion to compel arbitration, D. 55, the declaration and exhibits filed with Pan's opposition to the same, D. 60, and accompanying documents.

On April 2, 2024, Pan enrolled in CreditWorks, a credit monitoring service provided by Experian's affiliate, ConsumerInfo.com, Inc. D. 55-1 ¶¶ 1, 3, 7; see id. at 11-12 (referencing CreditWorks under general description of services in the Experian Consumer Services ("ECS")

Terms of Use Agreement). CreditWorks subscribers "are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from [Experian] through CreditWorks." Id. ¶ 7. Additionally, CreditWorks stores its consumer enrollment and account information in Experian's databases. Id. at ¶ 1. To enroll in CreditWorks, Pan was required to fill out a webform with his personal information and then click the "Create Your Account" button on the webform. Id. ¶ 3; see D. 60-4 at 8. Below the boxes where Pan provided his personal information was the following disclosure: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." D. 55-1 ¶ 3; see id. at 6; D. 60-4 at 8. The phrase "Terms of Use Agreement" ("Terms of Use") was hyperlinked in blue text, allowing the full text of the Terms of Use to be viewed by clicking on the link contained therein. D. 55-1 ¶ 4; see id. at 6; D. 60-4 at 8. After entering his information, Pan clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use. D. 55-1 ¶ 5. The Terms of Use contained an Arbitration Agreement, requiring Pan to arbitrate, among other things, all claims against "ECS" that "relate to" or "arise out of" the agreement, including claims under the FCRA. Id. ¶ 6, id. at 13-15. The agreement defines ECS to encompass its "affiliates," including Experian. Id.

**IV. Procedural History**

Pan filed his complaint on December 3, 2024, alleging Experian and the other Defendants violated the FCRA. D. 1. On May 8, 2025, Experian moved to compel arbitration. D. 54. The Court heard the parties on the pending motion and took this matter under advisement. D. 78.

## V. Analysis

### A. Admissibility of Dan Smith's Declaration

To support its motion to compel arbitration, Experian submitted the declaration of ConsumerInfo.com, Inc.'s Director of Product Operations, Dan Smith ("Smith"). D. 55-1. Pan disputes the admissibility of Smith's declaration. D. 60 at 6-15. To decide a motion to compel arbitration, a court may rely on documents outside of the complaint, Cullinane, 893 F.3d at 55, however, a party may object to any material that is inadmissible, Fed. R. Civ. P. 56(c)(2). To be admissible, a declaration must (1) "be made on personal knowledge," (2) "set out facts that would be admissible in evidence," and (3) "show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "The rule requires a scalpel, not a butcher knife," as such "[t]he *nisi prius* court ordinarily must apply it to each segment of an affidavit, not to the affidavit as a whole." Perez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001) (citation omitted). Even with this standard in mind, Smith's declaration is admissible in full. The persuasive authority on this exact issue has rejected similar admissibility challenges and upheld the admissibility of Smith's declaration to support a motion to compel arbitration. D. 66 at 6-7 and cases cited; see, e.g., Wells v. Trans Union, LLC, No. 3:24CV61 (RCY), 2025 WL 475846, at *1-7 (E.D. Va. Feb. 12, 2025); Hunt v. Experian Info. Sols. Inc., No. 5:24-CV-00348-TES, 2025 WL 104324, at *3-6 (M.D. Ga. Jan. 15, 2025).

Smith's declaration is admissible here as well. The declaration is based on Smith's personal knowledge. Under Rule 56(c)(4), "the requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise." Bonner v. Triple-S Mgmt. Corp., 68 F.4th 677, 687 (1st Cir. 2023) (quoting Perez, 247 F.3d at 316) (quotation marks and alteration omitted). Here, Smith declares that he is the Director of Product Operations for ConsumerInfo.com, Inc.,

where he has worked since January 2010. D. 55-1 ¶ 1. In this role, Smith supports the consumer enrollment process into CreditWorks, through which he is familiar with "how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." Id. Smith also avers that he is familiar with "ECS's electronic databases that store consumer enrollment information, including the webpages a consumer would have encountered to complete their enrollment into CreditWorks, the personally identifiable information entered when enrolling, and date and time of the consumer's acceptance of the Terms of Use" as well as ECS's internal documentation records which record consumers' account traffic. Id. According to Smith, he retrieved Pan's CreditWorks membership information from ECS's database and confirmed his membership details and to which version of the Terms of Use he agreed. Id. Based on Smith's review of this data, he avers that Pan enrolled in CreditWorks on April 2, 2024, and accepted and agreed to the December 11, 2023 Terms of Use. Id. ¶¶ 3, 5.[2]

Like our sister courts, "[b]ased on the above, the Court is satisfied that the Declaration contains admissible information made on personal knowledge and satisfies the Rule 56 standard." Nirandone v. Experian Info Sol's Inc., No. 24-CV-488-MRD-LDA, 2025 WL 1427452, at *2 (D.R.I. May 13, 2025). Smith's position as Director of Product Operations for ConsumerInfo.com, Inc., duties as an employee at ConsumerInfo.com, Inc., and review of internal documents and records, including Pan's membership information, establishes his personal knowledge over the CreditWorks enrollment process in general and Pan's enrollment process in particular. D. 55-1 ¶¶

[2] The parties submitted different iterations of the Terms of Use. Experian attaches the December 11, 2023 Terms of Use and identifies it as the version to which Pan agreed. D. 55-1 ¶ 5; id. at 8-54. Pan attaches two different versions to his motion, D. 60-4 at 10-26, 28-75, but does not otherwise identify them, point to any differences among the iterations, nor dispute that he agreed to the December 11, 2023 Terms of Use so the Court relies upon this version of same.

1-5; D. 66 at 7. As other courts have recognized, "Smith did not have to be in the room with [Pan] when []he enrolled to have firsthand knowledge" as "[h]is knowledge of the enrollment process, including the forms a person must complete to enroll, is sufficient firsthand knowledge upon which to base the declaration." Buelna v. Experian Info. Sols. Inc., No. 3:23-CV-724-CCB-SJF, 2024 WL 3873694, at *3 (N.D. Ind. Aug. 20, 2024). "Further, '[c]ontrary to [Pan]'s argument . . . Smith is not speculating as to what [Pan] "accessed, saw, or clicked on [April 2, 2024]," but is rather asserting what was necessary to enroll in CreditWorks.'" Hunt, 2025 WL 104324, at *4 (quoting Scribner v. Trans Union LLC, 738 F. Supp. 3d 1301, 1305 (E.D. Cal. 2024)). That Smith's declaration is "identical" to other declarations filed in support of "identical" motions to compel, D. 60 at 11, does not necessarily undermine the credibility of Smith's testimony, as courts indeed have concluded that these "similar declarations by Experian employees" are admissible to support similar motions to compel arbitration. Clark v. Experian Info. Sols. Inc., No. 2:24-CV-00783 WBS CKD, 2024 WL 4044130, at *2 (E.D. Cal. Sept. 4, 2024) (collecting cases).

Pan's argument that Smith "does not provide, or even so much as reference, any documents which substantiate his assertions about [Pan]'s interactions on any website," D. 60 at 9, also fails. Pan does not offer any binding case law that requires a declarant to submit all documents reviewed or relied upon in a declaration for the declaration to be deemed admissible. See Surprenant v. Rivas, 424 F.3d 5, 23 (1st Cir. 2005) (noting that a defendant's argument for which he "offer[ed] no legal authority" is waived). Nor does Pan provide any support for his claim that particular evidence, such as the IP address associated with Pan's device, is necessary to support Smith's declaration. See D. 60 at 9; Buchanan v. Experian Info. Sols., Inc., No. CV 24-793, 2024 WL 4817129, at *2 (W.D. Pa. Nov. 18, 2024) (rejecting argument that Smith needed to cite internal

records with Plaintiff's IP address to establish firsthand knowledge). Nor does Pan specify which records he claims that Experian "has thus far refused to produce," D. 60 at 10.

Even so, Smith does identify the documents he reviewed. Smith attests that he retrieved Pan's CreditWorks membership information from ECS's databases from the review of which he confirmed Pan's membership details including "the date and time of enrollment, and the version of the Terms of Use [he] agreed to." D. 55-1 ¶ 1; see D. 66 at 8; Bonner, 68 F.4th at 688 (concluding declarant's attestation that she reviewed company employment records sufficiently describes documents reviewed). Moreover, "the Terms of Use that [Pan] agreed to when he enrolled in CreditWorks" is attached to the declaration, D. 55-1 ¶ 5, id. at 8-54, as well as "the webform as it would have appeared when [Pan] enrolled in CreditWorks," id. at ¶ 3; id. at 6. As in other cases, "[t]hese documents, in addition to [Pan]'s specific membership records, would likely be admissible under the business records exception to hearsay," Nirandone, 2025 WL 1427452, at *2 (citing Fed. R. Evid. 803(6)), and this evidence is sufficient to establish Smith's firsthand knowledge for his declaration. Buchanan, 2024 WL 4817129, at *2 (collecting cases).

Pan's reliance upon three cases, D. 60 at 11-18, all of which have been overturned, criticized and rejected by decisions upholding the admissibility of Smith's declaration, D. 66 at 9-10, is unavailing. In two of the cases, Austin v. Equifax Info. Servs., LLC, No. 3:22CV707, 2023 WL 8646275 (E.D. Va. Dec. 14, 2023), rev'd and remanded sub nom. Austin v. Experian Info. Sols., Inc., No. 23-2301, 2025 WL 2177331 (4th Cir. Aug. 1, 2025) and Lamonaco v. Experian Info. Sols., Inc., No. 6:23-CV-1326-PGB-LHP, 2024 WL 1703112 (M.D. Fla. Apr. 19, 2024), rev'd and remanded, 141 F.4th 1343 (11th Cir. 2025), the courts analyze the declaration of Consumerinfo.com, Inc.'s Vice President of Business Governance, David Williams, not Smith. In Austin, the court found Williams's declaration inadmissible because "Williams' job description

was too ambiguous to . . . permit a finding that he had personal knowledge of the Credit[W]orks sign-on process." 2023 WL 8646275 at *4. Here, however, "Smith's declaration provides a much more detailed description of his job duties and understanding of the enrollment process." Williams v. Experian Info. Sols., Inc., No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at *9 (D. Ariz. Aug. 20, 2024). Likewise, in Lamonaco, the court held Williams's declaration inadmissible because "[i]n each of the numerous cases Experian cites, unlike in this one, the plaintiff had to admit to accessing the defendant's website or to signing up for an account in order to bring the cause of action." Lamonaco, 2024 WL 1703112 at *5. Here, Pan admits to signing up for an online Experian account. D. 60-2 ¶ 3; see Williams, 2024 WL 3876171, at *10 (holding Smith's declaration admissible and noting Lamonaco is distinguishable because Plaintiff admitted to having an online Experian account). In the remaining case, the court only found Smith's declaration "insufficient to establish he has personal knowledge of whether Plaintiff assented to the Terms of Use," but deemed the declaration admissible "to demonstrate the general process a consumer goes through to enroll in CreditWorks." Newton v. Experian Info. Sols., Inc., No. CV 623-059, 2024 WL 3451895, at *4 (S.D. Ga. July 18, 2024), rev'd and remanded, No. 24-12398, 2025 WL 2102084 (11th Cir. July 28, 2025). Further, unlike the declarations in those cases, the declaration here confirms that Smith retrieved and reviewed Pan's CreditWorks membership information to confirm his membership details and the Terms of Use he agreed to, giving him personal knowledge on the matter. Compare D. 55-1 ¶¶ 1, 5 (Smith Decl.), with D. 60-4 (Williams Decl. in Austin); Williams Decl. at 2-6, Lamonaco, 2024 WL 1703112, No. 6:23-cv-1326-PGB-LHP (M.D. Fla. Apr. 19, 2024), D. 27-1; Smith Decl. at 2-6, Newton, 2024 WL 3451895, No. 623-cv-059 (S.D. Ga. July 18, 2024), D. 17.1. Thus, Pan's proffered cases not only have been

reversed, Austin, 2025 WL 2177331, at *5-7; Lamonaco, 141 F.4th at 1348; Newton, 2025 WL 2102084, at *2-3, but are distinguishable from the case at hand.

Finally, Pan's declaration does not create a genuine dispute of material fact. In his declaration, Pan asserts: "[t]o the best of my knowledge, I have never clicked anything indicating that I agreed to waive my right to a jury trial with Experian"; "[u]ntil the filing of this lawsuit, I was not aware of Experian's claim that I waived my right to a jury trial by signing up for such an account" or "of Experian's claim that I agreed to arbitrate any claims against Experian by signing up for such an account"; and "[u]ntil filing this lawsuit, I has never heard of CreditWorks and did not know what CreditWorks was." D. 60-2 ¶¶ 2-4. Like several of the plaintiffs unsuccessfully challenging Smith's declaration in the past, "[Pan] does not dispute that he visited the webpage in question, that he signed up for an account, that the webpage appeared as defendant describes it, or that he had an opportunity to review the Terms of Use." Clark, 2024 WL 4044130, at *3; see Wells, 2025 WL 475846, at *4 (noting same); Humphrey v. Equifax Info. Servs., LLC, No. 2:24-CV-423-ACA, 2024 WL 5247164, at *4 (N.D. Ala. Dec. 30, 2024) (noting same); Acorin v. Experian Info. Sols., Inc., No. 24-CV-00036-AJB-BLM, 2024 WL 5011950, at *5 (S.D. Cal. Dec. 6, 2024) (finding that "[b]ecause Plaintiff does not dispute that she successfully created a CreditWorks account, there is only one reasonable conclusion given the enrollment process in effect at the time: Plaintiff was presented with the website depicted in Exhibit 1 and clicked the button entitled 'Create Your Account'"). Further, Pan "has not 'unequivocally' denied the arbitration agreement exists." Jenkins v. Experian Info. Sols. Inc., No. 1:23-CV-1634 (PTG/WBP), 2024 WL 4100258, at *3 (E.D. Va. Sept. 6, 2024). Pan's awareness of Experian's claims regarding the arbitration agreement is irrelevant to the inquiry of whether the agreement exists and Pan agreed to it. See Clark, 2024 WL 4044130, at *3; Driskill v. Experian Info. Sols.,

Inc., 753 F. Supp. 3d 839, 846 (N.D. Cal. 2024) (concluding that "[plaintiff's] declaration that he did not recognize that he was entering into a contract at the time of his account creation simply cannot create a genuine dispute of material fact on the issue of his assent to the Terms of Use or the arbitration contained therein"). Likewise, Pan's claim that he is unfamiliar with CreditWorks does not dispute the fact that the Terms of Use existed and he agreed to them on April 2, 2024. See Buchanan, 2024 WL 4817129, at *2 (ruling that "it is apparent that [Plaintiff] agreed to arbitrate disputes between himself and EIS—as an ECS affiliate—when he signed up for credit monitoring" despite Plaintiff's declaration that "he 'never heard of CreditWorks' until filing this lawsuit"). Pan fails to establish a genuine dispute of material fact on this issue.

For the aforementioned reasons, the Court concludes that Smith's declaration is admissible.

**B. Motion to Compel Arbitration**

The "FAA compels judicial enforcement of a wide range of written arbitration agreements." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). In relevant part, section 2 of the FAA provides that a "written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345 (2011), and "Section 2 embodies the national policy favoring arbitration," Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to

submit." Hogan v. SPAR Grp., Inc., 914 F.3d 34, 38 (1st Cir. 2019) (alterations in original) (quoting McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994)). "Thus, a party that attempts to compel arbitration 'must show [1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope.'" Id. (quoting Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017)).

Experian asserts that (1) a valid arbitration agreement exists and (2) Experian is entitled to invoke the arbitration clause either directly or as a third-party beneficiary, and (3) to the extent there is any dispute over the arbitrability of Pan's claims, that issue has been delegated to the arbitrator. D. 55 at 8-15. Pan contests the validity of the agreement, arguing that the "clickwrap agreement" described in Smith's declaration does not establish mutual assent because it fails to give Pan notice that he was agreeing to the Arbitration Agreement. D. 60 at 15-19. To determine whether parties have formed a contract, Massachusetts courts apply a reasonableness test, "'focusing on whether the contract provisions at issue were reasonably communicated and accepted'. . . [t]hat is, the party against whom the contract is being enforced must have (1) received 'reasonable notice of the terms' and (2) 'reasonabl[y] manifest[ed] . . . assent to those terms.'" Toth v. Everly Well, Inc., 118 F.4th 403, 410-11 (1st Cir. 2024) (citing Kauders v. Uber Techs., Inc., 486 Mass. 557, 572 (2021) (internal quotation omitted)). Under this test, "Massachusetts courts 'regularly enforce[]' so-called 'clickwrap' contracts." Id. at 411 (quoting Kauders, 486 Mass. at 574) (alternation in original)); see Kauders, 486 Mass. at 574 (collecting cases).

Pan had proper notice of the Terms of Use. In Toth, the First Circuit affirmed the validity of an arbitration agreement included in a clickwrap agreement. Toth, 118 F.4th at 411. First, the First Circuit concluded that the plaintiff had proper notice of the contract because "[t]he language

next to the checkbox indicates that users must read and accept the terms and conditions, signifying to users that they are entering into a contractual arrangement, and the terms themselves are linked." Id. Here too, the language next to the "Create Your Account" button indicates that Pan must accept the Terms of Use and the terms themselves were linked. D. 55-1 at 6; id. ¶ 3. That Pan declares he did not read or was not aware of the agreement, see D. 60-2 ¶¶ 2-3, is immaterial. Toth, 118 F.4th at 411 (noting that "'[i]n Massachusetts courts, it has long been the rule that "[t]ypically, one who signs a written agreement is bound by its terms whether [s]he reads and understands them or not[,]"' especially when the offeror provides inquiry notice") (quotation omitted)). As explained above, Pan does not dispute that he created his CreditWorks account, requiring him to affirm that he read and accepted the Terms of Use. D. 55-1 ¶¶ 3-5. Thus, Pan had proper notice of the agreement.

Experian also secured meaningful assent. Just as in Toth, "clickwrap contracts are the 'clearest manifestations of assent' because they require users to affirmatively signal their acceptance of the attached terms." Toth, 118 F.4th at 413 (citing Kauders, 486 Mass. at 574). As Experian has provided evidence that Pan created a CreditWorks account, D. 55-1 ¶ 3, which included the December 11, 2023 Terms of Use, id. ¶ 5, and Pan could not have created such an account without affirming his acceptance to these terms by clicking the "Create Your Account" button, id., the Court concludes that Experian has shown that a valid agreement to arbitrate exists. D. 55 at 10 and cases cited.

Experian may also enforce the Arbitration Agreement. The agreement provides that "ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement," and specifies that "[t]he terms 'you,' 'your,' 'we,' 'us,' and 'ECS' have the same meaning as those terms are defined in the Overview and Acceptance of Terms." D. 55-1 at 14.

As under the Overview and Acceptance of Terms, "ECS" includes Experian, the agreement clearly identifies Experian as a party. Id. at 8 (noting "[t]he term 'ECS' means ConsumerInfo.com, Inc., an Experian® company (also known as Experian Consumer Services) and referred to as 'Experian' on the Websites, its predecessors in interest, successors and assigns, affiliates (including, but not limited to, Experian Information Solutions, Inc.)"). Thus, Experian may enforce the agreement. D. 55 at 10-11. Likewise, the agreement binds Pan. See D. 55-1 at 8 (noting "[t]he term 'you,' 'your,' and 'User' means a Visitor or a Customer"). The parties do not dispute that Pan's FCRA claim falls within the scope of the Arbitration Agreement. As "[t]he agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether based in contract, tort, statute (including, without limitation, [FCRA] . . . for fraud, misrepresentation or any other legal theory," D. 55-1 at 15, the Court is satisfied that Pan's FCRA claims fall within the scope of the Arbitration Agreement. Thus, Experian has established the necessary elements to compel arbitration. See Nirandone, 2025 WL 1427452, at *2.

Accordingly, Experian's motion to compel arbitration is allowed.[3]

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Experian's motion to compel arbitration. D. 54.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge

---

[3] Having concluded that Experian has provided facts sufficient to establish a valid arbitration agreement exists, the Court denies Pan's request that the parties engage in discovery regarding formation. D. 60 at 19-20.